UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT JOHNSON, | : | CIVIL ACTION NO. 3:CV-11-0047 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | **FILED** |
| | : | **SCRANTON** |
| WILLIAM A. SCISM, | : | **MAR 3 0 2011** |
| | : | |
| Respondent | : | PER _____ |
| | | DEPUTY CLERK |

### MEMORANDUM AND ORDER

    Dwight Johnson, an inmate presently confined in the Allenwood Low Security Correctional Institution ("LSCI-Allenwood"), White Deer, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Johnson challenges the "denial of RRC placement based on a case service worker's decision without any existing policy to support such a decision." (Doc. 1, petition). Specifically, Petitioner states that he "received a moderate (PAC) 309, 10 days good time was taken, [he] was transferred to a low facility at LSCI-Allenwood" and has "requested to be considered for CCC placement again" and has "been denied without any existing policy to support such a denial." Id. A response and traverse having been filed, the petition is ripe for disposition. For the reasons set forth below, the petition for writ of habeas corpus will be dismissed.

### Background

    Petitioner is in custody pursuant to a 2007 conviction in the United States District Court for the Southern District of New York for conspiracy to distribute and possess with intent to distribute five grams or more of crack cocaine.

On May 6, 2010, after completing two components of the Residential Drug Abuse

Treatment Program[1] ("RDAP"), Johnson was transferred to a Residential Re-Entry Center (RRC)

placement in Brooklyn, New York. (Doc. 7, Ex. B, Att. 1, Declaration of Kendahl Gainer,

Correctional Treatment Specialist, at ¶ 3).

On August 19, 2010, Johnson incurred an incident report for violating conditions of the

community program. Id. at ¶ 4. Specifically, Johnson violated code 309, violating a condition of a

Community Program (staff conducted a home site visit with negative results) and code 305,

possessing an unauthorized item (cell phone) while at the RRC. Id. at ¶ 5. As a result, Johnson

was transferred from the RRC to MDC Brooklyn pending designation to a more suitable facility.

Id. at ¶ 6. In addition to his transfer back to a secured facility, Petitioner forfeited twenty-three (23)

days of good conduct time and incurred twenty (20) hours of extra duty. Id. at ¶ 7.

On September 2, 2010, Johnson was transferred to LSCI-Allenwood, where he is

currently incarcerated. Id. ¶ 8.

In a Memorandum dated September 3, 2010, D. A. Childress, USP-Lewisburg Unit

Manager, notified  USP-Lewisburg Warden Bryan Bledsoe, that the Unit Team had reviewed

Johnson's case and was not recommending him for participation in an RRC due to the fact that he

had incurred two incident reports. (Doc. 7,  Ex. B, Attach. 2, Memorandum ).  The Memorandum

further stated that the Unit Team's decision was made in accordance with Program Statement

---

1 .    The RDAP is one of the drug abuse treatment programs offered to inmates by the Federal
Bureau of Prisons ("BOP"). 28 C.F.R. § 550.53. RDAP has three components: (1) a unit-based
residential program lasting between six to twelve months; (2) an institution transition phase, when
possible; and (3) a community transitional services component during which the inmate is transferred
to a Residential Re-Entry Center ("RRC") or to home confinement for up to six months. Id. Inmates
who have completed all three components of RADP may be eligible for an early release incentive
pursuant to 18 U.S.C. § 3621(e) and 28 C.F.R.§ 550.54(a)(1)(iv).

7310.04. Id. Pursuant to 28 C.F.R. § 550.53(g)(1) and Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedure, "[I]nmates with repeated, serious institution rule violations…" are ordinarily not eligible to participate in RRC programming. (Doc. 7, Ex. B, Att. 3, Program Statement 7310.04, 10-11, (10)(i)). In addition, a "Memorandum for Chief Executive Officers" dated June 24, 2010, by D. Scott Dodrill, Assistant Director of Correctional Programs Division states that "[I]nmates with recent serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate," for RRC placement. (Doc. 7, Ex. B, Att. 4, Memorandum for Chief Executive Officers.)

On September 7, 2010, Johnson filed Administrative Remedy No. 606123-R1, appealing his sanction for violating code 309, violating a condition of a Community Program (staff conducted a home site visit with negative results) and code 305, possessing an unauthorized item (cell phone). (Doc. 7, Ex. A, Att 1, BOP SENTRY Report, Administrative Remedy Generalized Retrieval at 2).

On October 7, 2010, Administrative Remedy No. 606123-R1 was denied. Id. Johnson then filed administrative appeal No. 606132-A1 to the Central Office. Id.

On December 3, 2010, Johnson's appeal was rejected for procedural errors, based on the following:

> All four pages of the BP-11 form must be legible. Pages three and four are
> difficult to read. Consider writing on each page with exact wording.

Id. There is no record of Johnson re-filing this appeal. Id.

On December 2, 2010, Johnson filed Administrative Remedy No. 617105-F1 regarding his RRC placement. (Doc. 7, Ex. A, Att. 1, BOP SENTRY Report, Administrative Remedy Generalized Retrieval at 3).

3

On December 16, 2010, Administrative Remedy No. 617105-F1was denied. Id. On January 7, 2011, Johnson filed an appeal of Administrative Remedy No. 617105-R1 to the regional level. Id. This appeal was accepted on January 11, 2011 and was still pending on February 1, 2011, the date the response to the petition was filed. Id.

On January 7, 2011, Johnson filed the instant petition for writ of habeas corpus essentially arguing that the BOP's decision to expel him from the RDAP program failed to meet minium procedural due process requirements.  (Doc. 1, petition).

**Discussion**

### A.   Exhaustion of Administrative Remedies

The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal. Id.  The regulations further provide that the Warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days. See 28 C.F.R. § 542.18.  Finally, the regulation provides that if the inmate does not

receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level. Id.

Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

While it is apparent from the record that Johnson began the administrative remedy process, he failed to re-file his appeal challenging his CDC sanction and his appeal regarding his RRC placement was still pending when he filed the instant petition for writ of habeas corpus. As such, he has failed to exhaust the administrative remedy process.

Johnson concedes that he did not exhaust his administrative remedies. (Doc. 9, traverse). If a federal prisoner is not in compliance with § 542.10 then the habeas petition should be denied. Arias v. U.S. Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981). However, under limited circumstances, a prisoner may not be required to exhaust the administrative remedies. A prisoner's failure to exhaust may be excused if he can show that there is no opportunity to obtain adequate

redress, or that the issue the prisoner presents only pertains to statutory construction, if the prisoner can affirmatively show that the pursuit of the administrative remedy would be futile. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d. Cir. 1981). The Petitioner here has not shown that his situation meets the above mentioned exceptions.

The Petitioner argues that the BOP's actions are contrary to the holding of Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir.2005)[2], and that pursuing the administrative

---

2.   In Woodall, the inmate was sentenced to 30 months of imprisonment. Although the inmate's sentencing judge recommended that the inmate be placed in a halfway house for the final six months of his sentence, under the regulations, specifically, 28 C.F.R. §§ 570.20 and 570.21, the inmate could be placed in a Community Corrections Center (hereinafter "CCC") for no more than 11 weeks (since the regulations limited CCC placement to the final 10 percent of a sentence, not to exceed six months). The Court of Appeals for the Third Circuit found that the regulations were invalid because they expressly prohibited the BOP from considering the factors enumerated in 18 U.S.C. § 3621(b), and, therefore, were not a permissible construction of § 3621(b). The Third Circuit explained:

> [u]nder [the umbrella provision,] 18 U.S.C. § 3621(b), the BOP is vested with authority to determine the location of an inmate's imprisonment.... [Under a] more specific provision, 18 U.S.C. § 3624(c), ... the BOP [has] to prepare prisoners for community re-entry by, inter alia, placing them in community confinement.... [O]n December 13, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a memorandum concluding that the BOP' s practice of placing some prisoners in CCCs for all or significant parts of their sentences was contrary to the BOP's statutory grant of authority. The ... memo concluded that the BOP did not have "general authority" under § 3621 [and the sole] authority to transfer a prisoner to a CCC [was] derived solely from § 3624, and that the [latter] statute limit[ed] residence in a CCC to the lesser of 10 percent of the total sentence or six months. On December 20, 2002, the BOP followed the OLC's advice and memorialized it. [Following issuance of court decisions finding] this 2002 policy ... contrary to the plain meaning of § 3621, ... the BOP proposed new regulations ... limit[ing] CCC placement to the lesser of 10 percent of a prisoner's total sentence or six months.

Id. at 239-40. Addressing the validity of this new regulations, the Third Circuit found that:

> [t]he regulations [are invalid because they] do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and

remedy process would be futile. (Doc. 9, traverse). Thus, he concludes that because he "is not challenging the application of a BOP regulation but its validity," he is excused from exhaustion. Id. The Court finds Petitioner's argument unavailing, as he fails to persuade this Court that his issue is one of statutory construction which might alleviate the exhaustion requirement.

Although the Petitioner states he is "challenging the validity of the policy of using unauthorized discretion," (Doc. 9), he is clearly not challenging the statutory construction of 18 U.S.C. § 3621(b); rather, the discretionary decisions made by the BOP regarding his custody classification and place of confinement. Courts in this district have held that where a habeas petitioner challenges the specific application of a rule to his own situation, and not the rule's validity, exhaustion of administrative remedies is required.  See, e.g., Hrokek v. Angelini, No. 07-1228, 2008 WL 7171822 at 3 (M.D. Pa. Mar. 17, 2008) (Rambo, J.); Perry v. Williamson, No. 07-769, slip op. (M.D. Pa. Oct. 10, 2007); Ahmed v. Lindsay, No. 06-1221, 2006 WL 3308667 at 2 n. 3 (M.D. Pa. Oct.11, 2006) (Kosik, J.); Perry v. Williamson, No. 07-769, slip op. (M.D. Pa. Oct.

---

> pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244. However, the Third Circuit noted "that, [while] the BOP may assign a prisoner to [the facility of prisoner's preference, that] does not mean that it must." Id. at 251.  Rather, the BOP is merely required "to consider ... in good faith" whether to transfer an inmate, id., and, "[i]n making this decision, the BOP should consider § 3621 factors, as well as any other appropriate factors the BOP routinely considers." United States v. Herrington, 2006 U.S. App. LEXIS 17915, at *22 (3d Cir. 2006) (quoting Woodall, 432 F.3d at 251). Thus, Woodall prohibits the BOP from forfeiting its authority (a) to consider the statutory factors, or (b) to conduct individualized good-faith analyses. See Woodall, 432 F.3d at 251.

10, 2007) (Nealon, J.); <u>Narvaez v. Angelini</u>, No. 07-1227, slip op. (M.D. Pa. Sept. 5, 2007)

(McClure, J.); <u>see also</u> <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 239 n.2 (3d Cir. 2005)

("The District Court excused Woodall's failure to exhaust his administrative remedies. It

determined that exhaustion would be futile, given that Woodall is not challenging the application of

the BOP regulations, but their validity."). Therefore, the Petitioner is not excused from exhaustion

in this matter. Even if the Court were to determine that exhaustion should be excused, as discussed

below, the petition would be subject to dismissal.

### B.  Merits of the Petition

A district court may only extend the writ of habeas corpus to an inmate if he demonstrates

that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. §

2241(c)(3). Johnson has not met this burden. There was no ambiguity that his early release

eligibility was provisional and conditioned upon several factors, including his successful

completion of RDAP. He had no liberty interest in a sentence reduction under § 3621(e). <u>See</u>

<u>Richardson v. Joslin</u>, 501 F.3d 415 (5th Cir. 2007) (concluding that there is no liberty interest in a

sentence reduction under § 3621(e); the denial of a sentence reduction would only cause an inmate

to serve the remainder of his sentence under typical circumstances rather than imposing a

punishment qualitatively different from the punishment characteristically suffered by a person

convicted of a crime; and, the statute is discretionary) (citations omitted); <u>see also</u> <u>Rublee v.</u>

<u>Fleming</u>, 160 F.3d 213, 217-18 (5th Cir. 1998).

Moreover, the BOP is charged with administering § 3621(e), <u>see generally</u> <u>Lopez v.</u>

<u>Davis</u>, 531 U.S. 230, 235, 121 S.Ct. 714, 148 L. Ed. 2d 635 (2001), and it is required that inmates

complete RDAP in order to be eligible for early release under § 3621(e). <u>See</u> 28 C.F.R. §

550.58(a)(3)(i); id. § 550.56.  That requirement is a valid exercise of the BOP's discretion under §

3621(e) and this court must defer to it.  See, e.g., McLean v. Crabtree, 173 F.3d 1176, 1180-84 n.5

(9th Cir. 1999) (collecting cases) (regulation requiring participation in and completion of the

community-based aspect of RDAP is entitled to deference under Chevron, U.S.A. v. Natural Res.

Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L. Ed. 2d 694 (1984)).  Finally, when the BOP

decided not to reconsider Johnson's case and afford him the opportunity to reenter the program, it

was within the BOP's discretion.  Johnson has failed to meet his burden of establishing a violation

of the Constitution or federal law. 28 U.S .C. § 2241(c)(3).  Rather, he merely disagrees with a

BOP decision that is within its discretion to make.  Id.; see Marshall v. Lansing, 839 F.2d 933,

949-50 (3d Cir. 1988). His petition is therefore subject to dismissal.

### C.  Fourteenth Amendment Equal Protection claim

Johnson attempts to pursue an equal protection claim by asserting that "the regulations

are invalid moreover because they classify and distinguish between inmates similarly situated who

have mild to moderate behavior incidents."  (Doc. 9, traverse).  Johnson states that he is "not

violent, does not pose a threat to the community", yet "some get to go back to RRC's, others do not

who violate or fail for similar reasons."  Id.  Thus, Johnson concludes that "when the government

or a government agency treats similarly situated persons differently than others an equal protection

violation occurs."  Id.

It is well-settled that a litigant, in order to establish a viable equal protection claim, must

show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944);

Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986); E & T

Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988).

This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F.2d 1330 (3d Cir. 1992).

Johnson fails to allege who is similarly situated to him and treated differently, or how he has been treated differently than other similarly situated inmates. Additionally, he has failed to allege facts from which it can be concluded that the Respondent engaged in intentional or purposeful discrimination. Consequently, he fails to state an Equal Protection claim upon which relief may be granted, and the remaining claim in his petition must be dismissed.   An appropriate Order accompanies this Memorandum Opinion.

Dated: March 30, 2011

_____
**United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWIGHT JOHNSON, | :   CIVIL ACTION NO. 3:CV-11-0047 |
| | : |
| Petitioner | :   (Judge Nealon) |
| | : |
| v. | : |
| | : |
| WILLIAM A. SCISM, | : |
| | : |
| Respondent | : |

## ORDER

**AND NOW, THIS** 30th **DAY OF MARCH, 2011**, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.   The petition for writ of habeas corpus is **DISMISSED;**

2.   Petitioner's motion to produce (Doc. 8) is **DISMISSED** as moot; and

3.   The Clerk of Court is directed to **CLOSE** the case.

**United States District Judge**